## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Norfolk Division

| | |
|---|---|
| **DIANE S. BUTLER,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No.: 2:19cv673** |
| ) | |
| **KROGER LIMITED PARTNERSHIP I,** ) | |
| ) | |
| **Defendant.** ) | |

## <u>REPORT AND RECOMMENDATIONS</u>

This premises liability case involves a claim by Plaintiff Diane S. Butler ("Butler") against Defendant Kroger Limited Partnership I ("Kroger") for personal injuries she claims she sustained from a slip and fall on spilled blueberries at a Kroger grocery store in Virginia Beach, Virginia on August 21, 2019. A security camera at the store captured and recorded – to some extent – Butler's slip and fall. That video apparently was lost. Before the Court now are two related and potentially dispositive motions: Kroger's Motion for Summary Judgment, ECF No. 15, and Butler's Motion for Imposition of Sanctions[1] ("spoliation motion"), ECF No. 31. Both matters were referred to the undersigned United States Magistrate Judge ("undersigned") pursuant to Referral Orders from the United States District Judge. ECF No. 20, 38. The undersigned held remote hearings on each motion, along with a third hearing and a preliminary telephone conference with the parties, and makes these recommendations based on the parties' extensive briefing and the arguments and testimony provided at the hearings. Because the facts and analysis of the two motions are intertwined, the Court issues a single Report and Recommendations. For the following reasons,

---

[1] As discussed, *infra*, Butler's Motion seeks, as primary relief, default judgment against Kroger as to liability.

the undersigned recommends that Kroger's Motion for Summary Judgment be **DENIED**, and Butler's Motion for Imposition of Sanctions be **GRANTED IN PART**.

## I. PROCEDURAL BACKGROUND

In getting to the Court's ultimate recommendations, it is necessary to detail the complicated procedural background of this case. Plaintiff filed her Complaint against Kroger on December 12, 2019, approximately four months after the incident giving rise to this case. ECF No. 1. As discovery commenced, Butler issued a request for production of documents seeking, *inter alia*, video and photographs relating to Butler's slip and fall, and any documents generated in response to a litigation hold letter sent by Butler's attorney on September 16, 2019. ECF No. 32, attach. 3 at 4–5. Kroger did not produce the video captured by its security camera and made no mention of it in its response. *Id.* Butler then deposed Kroger store manager Omar Moragne on May 29, 2020, who testified that, following Kroger policy, he had forwarded a request to Kroger's Mid-Atlantic headquarters to preserve the video, and that it probably would have shown Butler's slip and fall. *Id.*, attach. 4.

On June 24, 2020, Kroger filed a motion for summary judgment and memorandum in support. ECF Nos. 15–16. In its motion Kroger argues four bases entitling it to judgment as a matter of law. First, Kroger contends that the undisputed facts fail to demonstrate proximate cause, i.e. that Butler's slip and fall and resulting injuries were caused by her slipping on the spilled blueberries. ECF No. 16 at 8–11. Second, Kroger contends that as a matter of law it cannot be shown to have breached its duty of ordinary care, in that Kroger responded to the spilled blueberries promptly upon learning of their presence on the floor. *Id.* at 11–15. Third, as an affirmative defense Kroger contends that the undisputed facts show that the spilled blueberries were an open and obvious hazard and thus Kroger had no duty to warn. Fourth, Kroger alleges

2

that Butler was contributorily negligent for failing to exercise reasonable care for her own safety when she proceeded into the store without being able to see clearly where she was walking. *Id.* at 15–19.

Butler submitted her memorandum in opposition to the summary judgment motion on July 7, 2020. ECF No. 18. Among other contentions, Butler asserted that Kroger lost or destroyed the video of the slip and fall, which very well could have been determinative, at least on the issue of notice, and that such action constitutes spoliation of evidence. *Id.* at 5–12. Consequently, Butler asks the Court to sanction Kroger by drawing an adverse inference against Kroger and deny it summary judgment. *Id.* at 11. Butler advised in a footnote that she intended to file a motion in limine directed to the spoliation issue. *Id.*, n.3.

Kroger filed its reply on July 13, 2020. ECF No. 19. In addition to rebutting Butler's substantive arguments regarding causation, duty, open and obvious hazard, and contributory negligence, Kroger addressed the spoliation claim, arguing the claim was "procedurally deficient" because Butler should have raised spoliation prior to asserting it as a defense to the summary judgment motion. ECF No. 19 at 7–8. Further, Kroger argued that "there is no evidence to show how the surveillance video was lost or whether such loss was due to Kroger's failure to take reasonable steps to preserve it," nor did Butler produce any evidence that Kroger engaged in willful conduct that led to the loss of the video. *Id.* at 9. Kroger did not proffer evidence or explanation as to what happened to the video, or why it was not produced in discovery. *Id, passim.*

The District Judge then referred the summary judgment motion for a report and recommendations on July 16, 2020, designating the undersigned "to conduct hearings, including evidentiary hearings if necessary." ECF No. 20. Finding that a hearing was necessary, the Court issued its Order on July 21, 2020 directing the parties to schedule an evidentiary hearing and to

3

"be prepared to submit evidence on the disclosure and disposition of the in-store surveillance video." ECF No. 21. On July 24, 2020, Kroger filed a memorandum "in reference to the Court's July 21, 2020 Order" setting forth "the circumstances surrounding the disclosure and disposition of the surveillance video." ECF No. 22 at 2–3. Kroger also requested that any hearing be scheduled in late September or October to allow for the appearance of Moragne as a witness, who had just undergone back surgery and would not be able to testify until that time.[2] *Id.* at 3. Butler then filed a motion to strike Kroger's July 24, 2020 memorandum on the grounds that, since briefing on the summary judgment motion was completed, Kroger's additional memorandum "seek[ing] to further explain the spoliation of evidence," was not permitted under E.D. Va. Local Civil Rule 7(F)(1). ECF No. 23-24.

To get the case back on track, the Court held a telephone conference with the parties on July 30, 2020. ECF No. 30. Thereat, the Court directed Butler to file any contemplated motion for spoliation within fourteen days, with briefing to occur in accordance with E.D. Va. Local Civil Rule 7(F). *Id.* Upon Butler's request, Kroger voluntarily supplemented its prior Rule 26 disclosures on August 6, 2020 by producing a series of emails by and among Kroger employees and its liability claims management company concerning the video. ECF No. 43 at 3. Kroger also produced a privilege log of email correspondence that was withheld from production pursuant to attorney-client privilege or work product immunity. *Id.*

On August 13, 2020, Butler filed the spoliation motion and a memorandum in support, captioned "Plaintiff's Motion for Imposition of Sanctions Against Defendant of Default Judgment, or, Alternatively, an Adverse Inference Instruction Due to Spoliation of Evidence and Intentional Concealment of Same." ECF No. 31–32. By its motion Butler sought either a default judgment

---

[2] Kroger described Moragne as "an important witness on the evidence preservation question." *Id.*

against Kroger on the issue of liability, or alternatively, a jury instruction advising that the video was unfavorable to Kroger on the issue of liability. *Id.* Relying on Rule 37(e)(2), Butler argued that this sanction was appropriate because of Kroger's loss of the video, and because Kroger failed to advise Butler in discovery that the video had existed at one time and that Kroger had lost it, despite counsel's preservation letter, and failed to produce correspondence by and between Kroger employees regarding the video. *Id.*

Kroger filed its opposition on August 27, 2020, attaching as exhibits, *inter alia*, declarations from four Kroger employees—Kiley Roberts, Sharon Franklin, Tarah Brooks, and Vernon Harris—explaining their role in the processing and search for the video. ECF No. 33 and attachs. 1, 2, 6, 8. Kroger argued that, under Rule 37(e)(2), neither sanction sought by Butler was appropriate because the failure to preserve the video was unintentional, and Butler cannot establish that Kroger's actions, as explained in the declarations, were done with the intent to deprive Butler of the use of the video in the litigation. *Id.* at 19–21.

Butler filed her reply on September 2, 2020 and argued that Kroger should be sanctioned in two respects. ECF No. 37. First, Butler seeks sanctions under Rule 37(c)(1) for Kroger's failing to disclose what happened to the video and its attendant communications in that regard, and for its purportedly "disingenuous and misleading responses" to Butler's document request. *Id.* at 13. Second, Butler appears to concede that the sanctions of default judgment or adverse jury instruction may not be available under Rule 37(e)(2) for Kroger's failure to preserve the video under these circumstances. *Id.* at 18–20. Nonetheless, Butler argues that intermediate sanctions—measures no greater than necessary to cure the prejudice as provided under Rule 37(e)(1)—are warranted. *Id.*

Having raised the issue of "intermediate sanctions" for the first time in her reply brief, Kroger sought leave to address this issue in a sur-reply and filed a motion for leave to do so on September 9, 2020. ECF No. 39. Butler did not object to Kroger's motion, ECF No. 41, and the Court granted it on September 14, 2020. ECF No. 46. Kroger then filed its sur-reply on September 24, 2020. ECF No. 47.

Meanwhile, on September 10, 2020, Butler filed a Motion for In Camera Review of the documents Kroger identified on a privilege log regarding Kroger's communications about the missing video. ECF No. 42. Kroger responded to the motion on September 24, 2020, ECF No. 48, and Butler replied on September 29, 2020, ECF No. 50. The Court held a remote hearing on Friday, October 2, 2020 and granted the motion, directing Kroger to submit the documents for in camera review no later than 10:00 a.m. on Monday, October 5, 2020. ECF No. 54. Following its in camera review of the submitted documents, the Court ordered Kroger to provide the documents, as redacted, to Butler no later than October 14, 2020. ECF No. 56.

The Court then held separate hearings, on October 15 and 27, 2020, on each motion, which included the testimony of three Kroger employee witnesses in connection with the spoliation motion, Vernon Harris, Kylie Roberts, and Sharon Franklin.[3] ECF Nos. 57, 58. The matter, now having been thoroughly argued and briefed, is ready for recommended disposition. Because the Court's findings and recommended disposition of the spoliation motion impacts the Court's findings and recommended disposition of the summary judgment motion, the Court starts with the spoliation motion.

## II. LEGAL STANDARD FOR SPOLIATION OF EVIDENCE

---

[3] The Court originally intended to hear both motions on October 15, 2020, beginning with the spoliation motion. However, the argument and evidence on October 15 on this motion lasted from 11:00 a.m. until 2:15 p.m. The Court was forced to adjourn the hearing at that time in order to handle another proceeding, and the hearing on the summary judgment motion was rescheduled for October 27.

"Spoliation refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation." *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001) (citations omitted). "The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation." *Id.* "[S]poliation is not a substantive claim or defense but a 'rule of evidence,' and thus is 'administered at the discretion of the trial court.'" *Hodge v. Wal-Mart Stores, Inc.*, 360 F.3d 446, 450 (4th Cir. 2004) (quoting *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 155 (4th Cir. 1995)). While the district court has "broad discretion to choose the appropriate sanction" to address a party's spoliation of evidence, Rule 37(e) "significantly limits a court's discretion to impose sanctions for loss or destruction of ESI [electronically stored information]." *Jenkins v. Woody*, No. 3:15CV355, 2017 WL 362475, at *12 (E.D. Va. Jan. 21, 2017). Rule 37(e) provides:

> **(e) Failure to Preserve Electronically Stored Information.** If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:
>
> **(1)** upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or
>
> **(2)** only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:
>
> **(A)** presume that the lost information was unfavorable to the party;
>
> **(B)** instruct the jury that it may or must presume the information was unfavorable to the party; or
>
> **(C)** dismiss the action or enter a default judgment.

Fed. R. Civ. P. 37(e). As provided by this rule, the Court must apply a multi-step analysis to determine if any sanctions or curative measures are appropriate for the failure to preserve ESI. "First, some 'ESI' must have been 'lost.' . . . . Second, that information (or evidence) must be of the sort that 'should have been preserved in the anticipation or conduct of litigation.' . . . Third, the evidence must have been lost 'because a party failed to take reasonable steps to preserve it.' .

7

. . Finally, the court must find that the evidence 'cannot be restored or replaced through additional discovery . . . .'" *Jenkins*, 2027 WL 362475 at *13; *see also Steves and Sons, Inc. v. JELD-WEN, Inc.*, 327 F.R.D. 96, 104 (E.D. Va. 2018).

If the Court finds that a party has failed to preserve ESI such that sanctions are warranted, the Court must determine the appropriate sanction. The sanctions of default judgment or adverse jury instruction, as Butler initially sought here, are only available if she can establish that Kroger acted with the intent to deprive her of the video evidence in the litigation pursuant to Rule 37(e)(2). Otherwise, if the Court finds the loss of the video evidence caused prejudice to Butler, it may order sanctions no greater than necessary to cure the prejudice to her, pursuant to Rule 37(e)(1). Finally, to be entitled to any sanctions under Rule 37(e), whether a party must demonstrate spoliation by clear and convincing evidence or by a preponderance of the evidence is unsettled. *See Jenkins*, 2027 WL 362475 at *12 ("The United States Court of Appeals for the Fourth Circuit has not yet decided the burden of proof in sanctions cases . . . . Some courts have applied the preponderance of the evidence standard . . . . Other courts have required clear and convincing proof of misconduct, especially when imposing severe sanctions.") (citations omitted). Nevertheless, without deciding which standard is required, the findings reached here have been established by clear and convincing evidence

### III. FINDINGS OF FACT REGARDING SPOLIATION

Based on the evidence proffered by the parties in support of and in opposition to the spoliation motion, including the declarations and email communications of Kroger employees and the testimony of employees Harris, Roberts, and Franklin, the Court makes the following findings of fact regarding spoliation.

8

1.      Kroger has security cameras in its stores for, among other reasons, recording accidents which could lead to possible litigation.

2.      With respect to Kroger grocery stores in the Hampton Roads geographic area, whenever a customer notifies Kroger of an accident and an incident report is prepared, Kroger's policy is to preserve any video of the accident in anticipation of litigation. This preservation of video is usually done remotely at Kroger's Mid-Atlantic Division Office in Roanoke, Virginia.

3.      On August 21, 2019, Diane Butler slipped and fell in the produce department of Kroger Store 532 in Virginia Beach, Virginia, sometime between 6:00 and 6:15 p.m.

4.      Video from a store security camera showed Butler's slip and fall, and thus was material evidence.

5.      Having been apprised of Butler's slip and fall, Kroger store manager Omar Moragne notified Kroger's Mid-Atlantic Division Office of the incident using Kroger's video submission form so that the store's surveillance video could be saved remotely.

6.      Asset Protection Administrative Assistant Sharon Franklin received Moragne's preservation request in Roanoke and attempted to record the video remotely, but due to technical problems she could not record more than seven minutes of video one hour before incident.

7.      At the time of this incident, Michael Justin Humbles was a Kroger District Asset Protection Manager in Hampton Roads, Virginia. Vernon Harris was a Kroger Asset Protection Specialist assigned to the Hampton Roads area as well.

8.      Knowing she was not able to capture the video remotely, Franklin contacted Harris and Humbles by email and directed them to burn (or copy) the relevant video to a DVD and then forward it to her at the Roanoke office. It was part of Harris' and Humbles' ordinary duties to copy videos onto DVDs under these circumstances and provide them to Kroger's Mid-Atlantic

9

Division Office. It also was not unusual that this had to be done when remote recording was not operable.

9.      Franklin directed Harris and Humbles to provide Roanoke with a tracking number when sending the DVD to be able to trace the video. She also advised them to make an extra copy of the DVD in case it was damaged or lost in transit, because Franklin had previously experienced multiple instances when DVDs arrived in a damaged or destroyed condition.

11.     Franklin kept a spreadsheet of all video requests which reflected, among other things, when she made the request and when the video was received by her.

12.     Pursuant to Franklin's instructions, Harris burned the video to a DVD on September 10 or 11, 2019.

13.     Harris viewed the video and confirmed it showed Butler's fall.

14.     At Humbles' request, Harris left the video for Humbles to send to Roanoke.

15.     Harris never made an extra copy of the DVD, despite being requested to do so by Franklin, because Humbles told him not to.

16.     Neither Harris nor Humbles provided Roanoke with a tracking number for a mail delivery of the video.

17.     The DVD of the video was never received by Franklin in Roanoke.

18.     Franklin did not follow-up on her email to Harris and Humbles regarding the status of the video.

19.     Franklin did not follow up on the status of the video by reviewing her spreadsheet, nor did she follow up with either Humbles or Harris as to the tracking number they were supposed to obtain, or the whereabouts of the DVD.

20.     Humbles left Kroger's employ for unexplained reasons within weeks of being tasked with sending video to Roanoke.

21.     Butler's counsel submitted a preservation request letter dated September 16, 2019 to Kroger specifically asking that video be preserved.

22.     Kroger received the preservation hold letter and acknowledged its receipt to Butler's counsel.

23.     Receipt of counsel's preservation hold letter and Kroger's acknowledgment did not prompt anyone at Kroger to follow up on Franklin's request to Humbles and Harris for the video.

24.     Kylie Roberts has been Kroger's Asset Protection Manager for Hampton Roads since March 2020.  Prior to that he was Kroger's Division Safety Manager in Hampton Roads.  As part of his job duties, he was responsible for overseeing general liability claims involving Kroger Store 532, among others.

25.     After Butler filed suit in December 2019, Roberts was asked by Sedgwick Claims Management Services, Inc., Kroger's liability claims manager, to locate the video of Butler's fall. While Roberts believed Kroger had a copy of the video, at some point he was advised that the only video which had been saved had recorded only seven minutes, one hour before Butler's fall.  He advised Kroger's attorney of this on February 12, 2020.

26.     Later that same day, Roberts spoke with Kroger Senior Asset Protection Specialist Tara Brooks.  Brooks advised Roberts that she believed Humbles might have burned a copy of the video to a DVD.  She also advised that Harris might have saved a copy.

27.     Roberts then spoke with Harris about the existence of the video.  On February 13, 2020, Harris advised Roberts that he (Harris) had burned a copy of the video showing Butler's fall and given it to Humbles to send to Roanoke.  Harris confirmed that the video showed Butler's fall.

11

28.     Having seen the video showing Butler's fall, Harris is the only known person who observed the fall, albeit on video, besides Butler.

29.     Despite learning, shortly after speaking with Kroger's attorney on February 12, 2020, that a DVD copy of the video showing Butler's fall had been made, contrary to his earlier representation, Roberts did not contact Kroger's attorney to correct the misinformation he had provided to the attorney earlier.

30.     Harris and Brooks looked for the video in the office formerly used by Humbles but could not find the DVD.

31.     Before filing its summary judgment motion Kroger did not disclose in either its Rule 26(a) initial disclosures or its responses to Butler's request for production of documents that a DVD copy of the video of Butler's fall had been made, that Harris had seen it, that Kroger had tried to find it but could not, and that it was lost.

32.     On July 22, 2020, one day after the Court issued its Order (ECF No. 21) directing the parties to be prepared to submit evidence at a hearing on the disposition of the in-store surveillance video, Kroger's attorney reached out to now-District Asset Protection Manager Roberts, who informed him for the first time that a copy of the video had been made after all but was lost. This generated another round of searches for the video by both Kroger's employees and attorney, to no avail. Kroger's attorney notified Butler's counsel of these developments the next day.

33.     To date, no copy of the video has been found.

## IV. SPOLIATION ANALYSIS

A.     Butler Has Established that Kroger Failed to Preserve ESI Which Cannot Be Replaced.

Preliminary, the parties do not dispute that the video of Butler's fall constitutes ESI. Therefore, applying the multi-step analysis required by Rule 37(e), the Court finds first that the

video here constitutes ESI that was lost. *Jenkins*, 2017 WL 362475 at *14. At the direction of Sharon Franklin in Kroger's Mid-Atlantic Division Office in Roanoke, Kroger employee Vernon Harris specifically made a copy of the surveillance video by burning it to a DVD. He then provided the DVD to Kroger's District Asset Protection Manager Humbles to deliver to Franklin. Franklin denies ever receiving the DVD, and searches conducted by Kroger employees have failed to locate it. There can be no dispute therefore that the video is lost.

Second, the video should have been preserved in anticipation of litigation. Kroger's own policies establish that any video of an incident such as Butler's slip and fall is to be preserved in anticipation of possible litigation. Consequently, Store manager Moragne notified the Mid-Atlantic Office to preserve the video, using Kroger's video submission form. Kroger not only anticipated litigation right after Butler's fall occurred, but it was specifically put on notice of potential litigation when it received Butler's attorney's September 16, 2019 litigation hold letter. Finally, because the video showed Butler's fall in the produce department of Store 532, it was the best evidence of what actually happened. Therefore, the video should have been preserved.

Third, the video was lost because Kroger failed to take reasonable steps to preserve it. Once it became apparent that the video could not be preserved remotely, Franklin appropriately reached out to District Asset Protection Manager Humbles and Asset Protection Specialist Harris to have them burn a copy of the video to DVD and forward it directly to her at the Mid-Atlantic Division Office. While Harris made the DVD as directed, Kroger failed to act reasonably in preserving this evidence afterwards. Despite Franklin's instructions to make an additional copy of the DVD because of her experience in receiving damaged or destroyed discs in the mail, Harris failed to do so. Despite being instructed by Franklin to send the DVD with tracking information so the mailing could be traced should it not arrive in Roanoke, no one did so. Despite keeping a

spreadsheet to track all video requests, Franklin failed to review it and follow up on the video's whereabouts. Humbles left Kroger's employ[4] and, because no one followed up as to the whereabouts of the DVD, was never questioned about what happened to the DVD given to him by Harris. Finally, despite receiving and acknowledging the September 16, 2019 litigation hold letter to preserve the video less than a week after Harris made the DVD, no one followed up to determine that the video had, in fact, been preserved. Any of these reasonable steps likely would have preserved this video evidence, but because none were taken, the video was lost.

Lastly, this video evidence cannot be restored or replaced though additional discovery. Kroger has searched at length for the video, both in February and again in July 2020. In February, Kroger knew that a copy of the video had been made, and its employees searched for it without success. After the Court issued its July 21, 2020 Order (ECF No. 21) directing the parties to be prepared to submit evidence on the disclosure and disposition of the in-store surveillance video, Kroger's attorney reached out to now-District Asset Protection Manager Roberts, who informed him for the first time that a copy of the video had been made. This generated another round of searches by both Kroger employees and their counsel, but the video was never found. According to Asset Protection Specialist Harris, who saw the video, it definitely showed Butler's slip and fall. Without the video, Butler has lost the best and most objective evidence of what happened on August 21, 2019. That evidence cannot be restored or replaced by additional discovery.

B.      The Court Declines to Find that Kroger Acted with Intent to Deprive Butler of the ESI.

Butler initially requested that the Court sanction Kroger for spoliation of the video by entering a default judgment or giving the jury an adverse inference instruction. The 2015

---

[4] The reasons for Humbles's departure have not been explained. While his co-workers claimed during their testimony at the hearing that they did not know the reasons Humbles left Kroger's employment and described him as a good employee, Kroger's counsel has characterized him as "indolent," thereby implying that the reason the video was lost was because of Humbles' nonfeasance. *See* ECF No. 33 at 1.

amendments to the Federal Rules of Civil Procedure adopted the present Rule 37(e), which provides that such sanctions are only appropriate "upon a finding that the party acted with the intent to deprive another party of the information's use in the litigation." The *Jenkins* court noted that the Fourth Circuit had yet to interpret the standard for proving intent under Rule 37(e)(2), and this Court's research suggests this is still the case.  2017 WL 362475 at *17.  The Advisory Committee Notes to the 2015 amendments recognized that the rule providing for default or an adverse instruction was "designed to provide a uniform standard in federal court for use of these serious measures when addressing failure to preserve [ESI].  It rejects cases . . . that authorize the giving of adverse-inference instructions on a finding of negligence or gross negligence."  Even though "intent" may not require a finding of bad faith, *see Buckley v. Mukasey*, 538 F.3d 306, 323 (4th Cir. 2001), the Court's findings regarding Kroger's loss of the video demonstrate negligence, not purposeful misconduct.  This conclusion is buttressed by the Advisory Committee Notes which reasonably observed that "[i]nformation lost through negligence may have been favorable to either party, including the party that lost it. . . . "  The video may have been favorable to Butler's case, for instance by showing the blueberries were knocked on the floor fifteen minutes before Butler's fall, and were disregarded by Kroger employees who happened by, or by showing Butler slipping directly on the blueberries.  Alternatively, it may have been favorable to Kroger's defense, showing the blueberries were knocked to the floor only seconds before Butler's fall.  Then again, it may not have been favorable to either party, showing little else besides Butler falling.[5]  Having lost the video, who would have benefitted from preservation of the video is unknown.

---

[5] Harris testified in his declaration and at the hearing that the video only showed Butler's fall, but not what caused her to fall.  This testimony is addressed *infra*, but in any event, Harris has not testified as to what else the video might have shown, such as the spilling of the blueberries.  Without the video, it is entirely speculative as to whether it would have aided Butler's case, Kroger's, or neither.

As noted *supra*, Kroger acted unreasonably in failing to take appropriate measures to preserve the video showing Butler's fall, and such actions as the Court has found were negligent. However, the evidence adduced does not suggest Kroger's failures were intended to deprive Butler of the use of the video. Absent evidence that Humbles deliberately lost or destroyed the DVD for the purpose of keeping it from Butler—and no such evidence has been produced—Butler cannot make the requisite showing of intent to support the imposition of the sanctions she originally sought pursuant to Rule 37(e)(2).

C.      Butler has Been Prejudiced by the Loss of the Video.

Rule 37(e)(1) requires the Court to find prejudice to Butler resulting from Kroger's loss of evidence in order to provide curative measures. As noted, the video is the best evidence of what happened in the Kroger store, and although determining what the video would have shown is entirely speculative, Butler was nonetheless deprived of that opportunity to make her case. Harris confirmed that the video showed the fall. That fact, alone, is enough to find that Butler was prejudiced by not being able to see it for herself and present it to the jury for their consideration. That it might have offered nothing else of value does not diminish the prejudice caused by Kroger's negligence. The Court thus finds sufficient prejudice to warrant curative "measures no greater than necessary to cure the prejudice."

D.      Remedial Measures are Appropriate to Cure the Prejudice

The Fourth Circuit case of *Silvestri v. General Motors Corp.*, 271 F.3d 583 (4th Cir. 2001) is instructive on a district court's exercise of discretion when determining sanctions in spoliation cases. Although Rule 37(e) does limit to some extent the Court's discretion in ESI spoliation, certain principles enunciated in *Silvestri* are extant in the Rule itself, specifically, that courts are empowered to institute remedial measures no greater than necessary to cure the prejudice.

*Silvestri* teaches that "a district court has broad discretion in choosing an appropriate sanction for spoliation, 'the applicable sanction should be molded to serve the prophylactic, punitive, and remedial rationales underlying the spoliation doctrine.'" 271 F.3d at 590 (quoting *West v. Goodyear Tire & Rubber* Co., 167 F.3d 776, 779 (4th Cir. 1999). In addition, an important goal of any sanction should be "to level 'the evidentiary playing field.'" *Id.*, quoting *Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995). Finally, *Silvestri* teaches that courts should endeavor to apply only those remedial measures necessary to redress the conduct at issue. 271 F.3d at 590. Applying the Court's broad discretion with the goal of leveling the evidentiary playing field, the Court recommends that the following remedial measures be implemented as being no greater than necessary to cure the prejudice to Butler caused by Kroger's spoliation of evidence.

1.    Kroger's motion for summary judgment should be denied regarding its defenses alleging no proximate cause, no breach of duty, and no duty to warn based on an open and obvious hazard.

Kroger bases its motion for summary judgment on the grounds that Butler cannot show proximate cause, i.e. that she slipped on the spilled blueberries; and cannot show that Kroger breached its duty of ordinary care, claiming that the evidence does not establish Kroger had notice of the hazardous condition. Kroger also asserts that it had no duty to warn of the spilled blueberries because they were an open and obvious hazard, and therefore Butler was contributorily negligent as a matter of law.[6] The video of Butler's fall may very well have provided significant evidence relevant to these three defenses, and supported Butler's claim instead. For instance, the video could have shown how and when the blueberries spilled on the floor, establishing that Kroger

---

[6] Kroger also asserts a contributory negligence defense based on Butler's failure to exercise care for her own safety by walking into the produce section of the grocery store without being able to see clearly where she was going. This affirmative defense is addressed *infra*, but because it involves a question of Butler's perception, is not logically connected to anything that might have been shown on the lost video.

should have been put on notice of a hazardous condition.  The video could have shown Butler actually slipping on the spilled blueberries, rebutting the proximate cause defense.  The video could have shown that the blueberries on the floor were not readily visible, thereby countering the "open and obvious" defense.  Although the video also might have shown none of these things, nonetheless, it was Kroger who lost the video, and it should not be able to profit by securing summary judgment after depriving Butler of her best evidence that could have supported her claims and rebutted Kroger's defenses.  *Jenkins*, 2017 WL 362475 at *18 ("Most importantly, though, without the video, Plaintiff loses the best and most objective evidence of whatever happened…").  As a result, the Court should deny Kroger's motion for summary judgment on these grounds.[7]

2.      The jury should be instructed that there was video of Butler's slip and fall but that Kroger lost it, and both parties should be permitted to present evidence and argument regarding Kroger's failure to preserve the video evidence.

The court in *Jenkins* was confronted with a situation much like that presented here.  There, Erin Jenkins died while in custody as a pretrial detainee at the Richmond City Jail.  Sheriff C.T. Woody, who ran the jail, failed to preserve surveillance video which would have shown the decedent in the last hours of her life.  The failure to preserve the video was contrary to the jail's policies to preserve such video under these circumstances.  Having lost the best evidence of what happened, the Court found that plaintiff had been prejudiced pursuant to Rule 37(e)(1) and ordered remedial measures.  Those measures included instructing the jury that the video was not preserved and allowing "all parties to present argument and evidence at trial regarding Sheriff Woody's destruction of, or failure to preserve, the Video Data." 2017 WL 362475 at *18.  Similar measures are appropriate here, as Kroger's spoliation has caused a significant hole in the evidence.  It is

---

[7] As alternative grounds for denying the summary judgment, the undersigned also has determined that there are material facts in dispute on these issues.  *See* Section VIII, *infra.*

appropriate to advise the jury that the evidentiary hole exists, and to permit the parties to proffer evidence and argument as to how that occurred.

        3.      Kroger should be precluded from eliciting testimony from Vernon Harris claiming that the video did not show what caused Butler to slip and fall.

As noted *supra*, Vernon Harris testified in his declaration and hearing testimony that while the video did show Butler's fall, it did not show what caused Butler to slip and fall. Of course, he apparently is the only person who has seen the video, and it is now lost. It would be unfairly prejudicial to Butler to permit a Kroger employee to testify about matters supporting his employer's defense based solely on evidence its employer spoliated. In *Jenkins*, the court found it appropriate to "preclude any evidence or argument that the contents of the video corroborated Defendants' version of events." *Id.* This remedial measure was entirely appropriate because, without the video, such testimony could not be gainsaid by any opposition due to Sheriff Woody's spoliation. Here, too, Butler has no opportunity to challenge Harris' putative testimony on what the video showed because of Kroger's spoliation.

E.     Kroger's Failure to Timely Disclose the Existence and Subsequent Loss of the Video, the Email Communications among Kroger Employees Regarding the Video, and the Identification of Harris as a Witness to What the Video Showed, Does Not Warrant a Sanction.

In addition to sanctioning Kroger for spoliation of evidence in losing the video, Butler also seeks a sanction for Kroger's failure to disclose the spoliation, for obfuscating its answer to Butler's request for production of documents regarding Kroger's response to Butler's litigation hold letter, and for failing to disclose that a DVD of the video had been made and that Vernon Harris had viewed it.

Butler issued the following document requests to which it challenges Koger's response:

       7. Videos and photographs relating to the slip and fall alleged in the Complaint.

OBJECTION: Kroger objects to this Request to the extent it seeks information protected by the attorney-client privilege and/or work product doctrine.

RESPONSE: Without waiving the stated objection, please see the attached photograph of the footwear Plaintiff testified she wore at the time of the subject incident, bates-labeled KPL 0001.

8. Any actions taken in response to the undersigned counsel's letter of September 16, 2019 to Gina Roy notifying her of this claim and requesting that evidence be preserved.

OBJECTION: Kroger objects to this Request on the grounds the information sought is irrelevant and not likely to lead to the discovery of any admissible evidence.

RESPONSE: Without waiving the stated objection, Kroger avers that it is not aware of any incident on September 16, 2019 involving Gina Roy.

ECF No. 32, attach 3 at 4–5.

With respect to Kroger's failure to disclose the existence and subsequent loss of the video, this information was eventually disclosed once Omar Moragne testified in his deposition that he had formally requested the video be preserved. ECF No. 33 at 6. Kroger's counsel then advised Butler's attorney what he believed to be true at the time—that efforts to preserve the video remotely had failed, in that only seven minutes of video from one hour before the fall had been recorded due to a technical error, and thus Kroger had no video. *Id.* Once Butler raised this issue in her opposition to summary judgment and the Court then issued its Order directing a hearing at which evidence was to be presented, Kroger's counsel learned that a video had in fact been burned to a DVD, but that Kroger had lost it. *Id.* at 7–8. He then notified opposing counsel the next day. *Id.* at 12. Kroger argues that since it did not have the video at the time Butler submitted her discovery request, its answer that it had no such ESI was correct. *Id.* at 5. Kroger faults Butler for failing to issue any interrogatories asking what happened to the surveillance videos (and notes that Butler issued no interrogatories at all), or a motion to compel, and absent such direct inquiry, it had no duty to disclose prior to when the issue first came up at Moragne's deposition. *Id.* at 5, 7.

20

Butler's frustration with being kept in the dark regarding the existence of the video, despite her attorney's prompt issuance of a litigation hold letter, is understandable. Her consternation with respect to Kroger's discovery responses which made no mention of the DVD and disclaimed awareness of "any incident on September 16, 2019 involving Gina Roy" is also understandable.[8] Nonetheless, under the current discovery rules, Kroger's disclosures and discovery responses are not sanctionable.

Courts have been encouraging fair and open discovery for generations. In 1947 the United States Supreme Court observed that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). A decade later the Supreme Court declared that the combination of "the modern instruments of discovery" and "pretrial procedures make a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958). Recently, the Fourth Circuit observed that "[t]he purpose of Rule 26(a) is to allow litigants 'to adequately prepare their cases for trial and to avoid unfair surprise.'" *Bresler v. Wilmington Tr. Co.*, 855 F.3d 178, 190 (4th Cir. 2017), citing *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014). Despite these pronouncements, discovery problems, including surprises, have persisted. When the Federal Rules of Civil Procedure were amended in 1980, Justices Powell, Stewart and Rehnquist dissented from the proposed changes to the discovery rules because they "f[e]ll short of those [changes] needed to accomplish reforms in civil litigation that [were] long overdue." Order of the Supreme Court of

---

[8] Frustration does not warrant the misconduct allegations leveled by Butler's counsel. *See, e.g.*, ECF Nos. 37 at 10 and 33, attach. 12. Counsel should not "indiscriminately bludgeon the professional reputations of opposing counsel out of frustration, or in angry overreaction, or on mere suspicion alone." *Nault's Auto. Sales, Inc. v. Am. Honda Motor Co., Acura Auto. Div.*, 148 F.R.D. 25, 36 (D.N.H. 1993), *overruled on other state-law grounds, Averill v. Cox*, 761 A.2d 1083 (N.H. 2000).

the Unite States Adopting and Amending Rules, Fed. R. Civ. P. (April 29, 1980).  The Justices

were concerned that the "mere threat of delay or unbearable expense denies justice to many actual

or prospective litigants.  Persons or businesses of comparatively limited means settle unjust claims

or relinquish just claims simply because they cannot afford to litigate." *Id.*

Change arrived in 1993 when the Rules were amended to include the requirement that

parties provide initial disclosures at the front end of each case.  Specifically, the 1993 Amendment

to Rule 26 of the Federal Rules of Civil Procedure adopted the requirement that parties provide

initial disclosures of, *inter alia*, witnesses "likely to have discoverable information relevant to the

disputed facts alleged with particularity in the pleadings ... and a copy of, or a description by

category and location of, all documents, data compilations, and tangible things in the possession,

custody or control of the party that are relevant to disputed facts alleged with particularity in the

pleadings."  Fed. R. Civ. P. 26(a)(1)(A) & (B) (eff. Dec. 1, 1993)(amended 200).  According to

the Advisory Committee Notes attendant to the rule:

> All persons with such information should be disclosed, whether or not their
> testimony will be supportive of the position of the disclosing party.  As officers of
> the court, counsel are expected to disclose the identity of those persons who may
> be used by them as witnesses or who, if their potential testimony were known,
> might reasonably be expected to be deposed or called as a witness by any of the
> other parties.
> ****
> [T]he disclosure should describe and categorize, to the extent identified during the
> initial investigation, the nature and location of potentially relevant documents and
> records, including computerized data and other electronically-recorded
> information...
> ****
> The disclosure requirements should, in short, be applied with common sense in light
> of the principles of Rule 1, keeping in mind the salutary purposes that the rule is
> intended to accomplish.  The litigants should not indulge in gamesmanship with
> respect to the disclosure obligations.

Advisory Committee Notes, 1993 Amendment, Subdivision (a), Paragraph (1).  Had this version

or Rule 26(a) currently been in effect, Kroger's might have run afoul of this Rule, at least with

respect to the failure to disclose Harris as a witness. However, in 2000 this Rule was amended to limit those witnesses whose identities a party was required to disclose to those who "are likely to have discoverable information … that the disclosing party may use to support its claims or defenses…" Fed. R. Civ. P. 26(a)(1)(A)(i). The Advisory Committee Notes noted that one effect of this amendment was that "[a] party is no longer obligated to disclose witnesses or documents, whether favorable or unfavorable, that it does not intend to use." 2000 Amendment, Subdivision (a)(1). The Notes further advised "[t]he disclosure obligation applies to 'claims and defenses,' and therefore requires a party to disclose information it may use to support its denial or rebuttal of the allegations, claim, or defense of another party." Id.

The result of this Rule amendment is that, unless Kroger planned to use specific evidence—whether a witness or ESI—it was not obligated to initially disclose its existence under Rule 26(a)(1). At the hearing Kroger contended that it did not intend to use Harris as a witness to rebut any of Butler's claims, therefore it was not obligated to identify him as a witness, even though he was the only person who viewed the video of the slip and fall. Under the 1993 amendments to Rule 26, Kroger at the least would have been required to identify Harris as a witness, but under the 2000 amendment, there is no such obligation. That left the burden on Butler to utilize the "modern instruments of discovery" to learn of a witness such as Harris. It further left it to Butler to issue follow-up discovery to its document requests, such as interrogatories, to inquire as to what happened to the surveillance video, and what steps were taken by Kroger to preserve it.

Lastly, Butler argues that Kroger's response to its request for production regarding any documents generated in response to the litigation hold letter required the disclosure of company emails seeking and then failing to locate the video. Kroger's counsel contends that he "misread and misunderstood the Request" and that he "did not recognize Gina Roy's name nor …

understand this request to be referring to Plaintiff's counsel's preservation letter." ECF No. 33 at 6. In any event, Kroger contends that any such emails were not generated in response to the litigation hold letter but were instead independent of it. *Id.* at 7. Three sets of emails addressed the question of the missing video. The first set was generated in August and early September 2019, and concerned directions to preserve the video and provide it to Kroger's Mid-Atlantic Division Office. ECF No. 32, attach. 11, and No. 33, attachs. 2, 4. As is apparent from the emails, they were promulgated before the September 16, 2019 litigation hold letter and thus could not have been "actions taken in response" to Butler's preservation request. The second set of emails was generated between January 28, 2020 and February 13, 2020. ECF No. 43 attach. 9 at 1–2. According to Kroger, these emails were generated following Kroger's counsel's inquiry shortly after suit was filed as to the existence of any surveillance video. Butler does not contest this point. Consequently, Kroger's contention that these documents do not constitute "actions taken in response" to the litigation hold letter, but instead, in response to Kroger's counsel's inquiry, is not incorrect. The third set of emails consists of communications following this Court's July 21, 2020 Order directing that an evidentiary hearing be held to determine the disposition of the video. As Kroger argues and the Court agrees, these emails also do not constitute "actions taken in response to the litigation hold letter." In light of the wording of document request 8, the Court cannot find that either it or Rule 26(a)(1) imposed a duty on Kroger to disclose the events surrounding the attempted preservation of, and subsequent search for, the surveillance video, all of which were unrelated to Butler's litigation hold letter. Nor can the Court find that Kroger, based on the wording of document request 7, had a duty under that request or under Rule 26(a) to disclose that it lost the video of the slip and fall. As a result, sanctions are not warranted.[9]

---

[9] Although the Court's findings are based on the fact that neither Rule 26(a) nor the wording of the document requests compelled disclosure of the emails or the prior existence of the video, Kroger's response to request for production 8—

## V.  SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate when the Court, viewing the record as a whole and in the light most favorable to the nonmoving party, finds there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A court should grant summary judgment if the nonmoving party, after adequate time for discovery, has failed to establish the existence of an essential element of that party's case, on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

For the nonmoving party to prevail in a motion for summary judgment, they must go beyond the facts alleged in the pleadings and instead rely upon affidavits, depositions, or other evidence to show a genuine issue for trial. *See id.* at 324.  Conclusory statements, without specific

---

"that it is not aware of any incident on September 16, 2019 involving Gina Roy"—made no sense, and does not appear to be in keeping with the certification requirement imposed by Rule 26(g).  Rule 26(g) requires counsel to certify that discovery responses signed by counsel are "complete and correct" based on counsel's "belief formed *after a reasonable inquiry*." (emphasis added).  Kroger's counsel's representation that he did not understand what Butler was seeking by this document request, ECF No. 33 at 6, which sought documents regarding "actions taken in response to the undersigned counsel's letter of September 16, 2019 to Gina Roy notifying her of this claim and requesting that evidence be preserved", ECF No. 32, attach. 3 at 5, is at odds with counsel's duty to make a reasonable inquiry.  *See Mancia v. Mayflower Textile Servs. Co.,* 253 F.R.D. 354, 357-363 (D. Md. 2008) (Detailing the animating principles behind Rule 26(g) and its application to the expected conduct of attorneys in discovery).  In the first instance, any experienced attorney should have understood that the request referred to Butler's attorney's litigation hold request, especially given the nature of the personal injury claim, and responded accordingly.  If counsel truly did not understand the request, his duty to reasonably inquire under Rule 26(g) required him to at least *ask his client*.  Similarly, while the attorney personally may not have known who Gina Roy was, his client Kroger obviously knew, since she was the Kroger store manager. ECF No. 32, attach. 6.  Still, Kroger's counsel offered no explanation or excuse as to what efforts, if any, he made to find out who Roy was from his own client.  Counsel further failed to consult with opposing counsel for clarification if he did not understand what was sought by this request and who Gina Roy was.  Kroger's deficient response to a perfectly appropriate discovery request would have been rejected by the Court had it been brought to the Court's attention earlier in these proceedings.  But it was not.  Butler's counsel, too, had an obligation to follow up on discovery responses he considered inadequate, but unfortunately took no steps to do so.  Butler's counsel could have issued interrogatories seeking an explanation for surveillance video and any efforts Kroger made to preserve it.  He did not do so.  Far from the prospect of becoming embroiled in a discovery dispute, as Butler's counsel argued at the hearing as the reason he did not follow up, even with respect to Kroger's objectionable response to request 8, a simple phone call might have resolved the problem.  E.D. Va. Local Civil Rule 37(E) provides that before any motion to compel is filed, parties must meet and confer either in person or by telephone to resolve any dispute.  Hence, all Butler's counsel had to do to obtain a proper response to document request 8 was call Kroger's counsel on the phone and explain exactly what type of documents he sought.  Butler's counsel's failure to do so cannot now justify imposing some type of sanction against Kroger for a deficient discovery response which Butler did not protest at the time it was made.

evidentiary support, are insufficient. *Causey v. Balog*, 162 F.3d 795, 802 (4th Cir. 1998). Rather, "there must be evidence on which the jury could reasonably find for the [party]." *Anderson*, 477 U.S. at 252.

Finally, as provided in E.D. Va. Local Civil Rule 56(b), "In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."

## VI. UNDISPUTED MATERIAL FACTS[10]

On August 21, 2019, at approximately 6:00 p.m., Diane Butler entered the Kroger store located on Shore Drive in Virginia Beach, Virginia to purchase grocery items. Kroger's Statement of Facts ("SOF") #1, ECF No. 16 at 2. After grabbing a shopping cart from the sidewalk outside, Butler entered the store through the left side of the doorway and into the vestibule, removed her sunglasses, and proceeded to the produce department on the right of the entrance. SOF #2; ECF No. 18, attach 5 at 19-21, 28-29, 48–49. A few feet in front the entrance, there was a produce stand that contained, among other things, plastic clamshell containers of blueberries. SOF #3. Butler did not see any blueberries on the floor upon first entering the store. SOF #5. She first shopped in the produce department, and retrieved bread, milk, and a quarter of a watermelon which she placed in her cart. SOF #4. Butler then returned to the vestibule area where she had just entered to look at the sale items on display. SOF #7. The vestibule area had a large window that stretched across that side of the store area. SOF #9. It was a notably bright day, and Butler did not put her sunglasses on inside the vestibule. *Id.* Butler re-entered the store from the vestibule, intending to go to the left side of the store, which required her to traverse through the produce

---

[10] Butler disputed "the accuracy, in part," of three of Kroger's twenty-two paragraphs of material facts. ECF No. 18 at 2. To the extent that Butler contests those facts or provides additional facts, those facts are also addressed herein.

department. SOF #11. Butler walked at least four feet into the produce department and fell.[11]
SOF #13. At the time of her fall, there were a considerable number of blueberries on the floor that
spanned approximately twelve feet between the nearest produce stand and the floral depart across
the entryway. SOF #16. The store's floor is dark brown in color. Ex. 16, attach. 4 at 7, attach. 5.
A customer who followed Butler into the store from the vestibule asked her what happened, and
she immediately answered that she had slipped on the berries on the floor. ECF No. 18, attach. 5
at 51-52.

Store manager Omar Moragne had inspected the floor area around the produce table at 6:00
p.m. that day and did not observe any blueberries on the floor. SOF # 6. After falling, Butler
called out to a nearby Kroger clerk, who had arrived in the area to clean up the spilled blueberries,
which he had only just noticed. SOF # 19. Moragne arrived, took Butler back to his office where
they filled out an accident report, and called an ambulance. ECF No. 18, attach 5 at 36–37.

### VII. DISPUTED MATERIAL FACTS

The parties dispute the time at which the fall occurred and relatedly, how long Butler had
been in the store before she fell, and whether and to what extent Butler's vision may have been
impaired when she re-entered the store from the vestibule and subsequently fell in the produce
department. These disputes center largely on the interpretation of Butler's deposition testimony.
Kroger asserts that Butler had been shopping for four minutes before she fell. SOF # 7; ECF No.
19 at 3. Butler's deposition testimony demonstrates that the time between when she got the
watermelon, milk and bread and when she fell was four minutes. ECF No. 18, attach. 5 at 55.
Consequently, the parties dispute how much time elapsed between when Butler entered the store

---

[11] Although Kroger describes what happened as Butler's "alleged" fall in its summary judgment motion, it admitted
at the hearing that Butler did, in fact, fall, as disclosed by the surveillance video that Harris admitted witnessing,
*supra*.

for the first time, and when she fell, since no undisputed fact demonstrates how long Butler was in the store before she picked up the grocery items.

With respect to the time of the fall, the incident report prepared by Moragne indicates the slip and fall occurred at 6:15 p.m.  ECF No. 18, attach. 1 at 1.  Kroger, relying on the premise that Butler had only been shopping for four minutes and that she entered the store at 6:00 p.m., contends that the fall must have happened at approximately 6:04 p.m.  SOF # 4.  This material fact is therefore disputed.

Finally, Kroger asserts Butler "could not see the floor area where she was pushing her cart," based on Butler's testimony that she "couldn't see anything on the floor" and that her eyes had not adjusted to the light once she re-entered the store from the brightly lit vestibule.  SOF # 12, ECF No. 18, attach. 5 at 56-57.  Butler relies on that part of her testimony where she stated that, while it was "difficult to see" because of "the sunshine and [her] eyes not adjusting to the light," she "could see where she was going," but she "couldn't see anything on the floor.  If it was something dark on the dark floor, no, [she] didn't see that."  ECF No. 18, attach. 5 at 57.  Hence, the visibility of the blueberries on the floor and the extent to which Butler's vision might have been impaired upon re-entering the store from the vestibule are in dispute.

## VIII.  SUMMARY JUDGMENT ANALYSIS

This case comes before the Court under 28 U.S.C. § 1332(a)(1) (diversity jurisdiction), and arose from an incident at a Kroger store in the Eastern District of Virginia.  Accordingly, Virginia law controls the substantive legal issues at play.  *Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 420 (4th Cir. 1993) ("Because the situs of the accident was Virginia, the law of that state will apply in this diversity action.").  Under Virginia law, "in premises liability cases, the plaintiff must introduce evidence of the responsible person's actual or constructive knowledge of a defective

28

condition on the premises to establish a *prima facie* case of negligence." *Grim v. Rahe, Inc.*, 246

Va. 239, 242 (1993).

> An owner of premises owes a duty to its invitee (1) to use ordinary care to have the premises in a reasonably safe condition for the invitee's use consistent with the invitation, and (2) to use ordinary care to warn its invitee of any unsafe condition that was known, or by the use of ordinary care should have been known, to the owner; except that the owner has no duty to warn its invitee of an unsafe condition which is open and obvious to a reasonable person exercising ordinary care for his own safety.

*Fobbs v. Webb Bldg. Ltd.* Partnership, 232 Va. 227, 229 (1986).   Specifically applying these

principles to slip-and-fall cases, the Virginia Supreme Court has consistently maintained,

> The [store owner] owed the [customer] the duty to exercise ordinary care toward her as its invitee upon its premises.  In carrying out this duty it was required to have the premises in a reasonably safe condition for her visit; to remove, within a reasonable time, foreign objects from its floors which it may have placed there or which it knew, or should have known, that other persons had placed there; to warn the [customer] of the unsafe condition if it was unknown to her, but was, or should have been, known to the [store owner].

*Winn-dixie Stores, Inc. v. Parker*, 240 Va. 180, 182 (1990).  Notably, the burden of proving the

defendant's alleged negligence is on the plaintiff, and where there are material facts at issue, it is

ordinarily a question for the jury to decide whether such negligence exists.  *See Colonial Stores*

*Inc. v. Pulley*, 203 Va. 535, 537 (1962).

It is undisputed that on the day of the incident, Butler was an invitee, and Kroger, as the

owner of the premises, owed her a duty to exercise ordinary care and have the premises in a

reasonably safe condition.  The parties further agree that on the date of the incident there were

blueberries scattered across the floor which created an unsafe condition for invitees.  In light of

those undisputed facts, Kroger contends that summary judgement is appropriate because: 1) Butler

cannot establish that the blueberries caused her fall; 2) Kroger exercised ordinary care as a matter

of law; 3) Kroger had no duty to warn since the unsafe condition was open and obvious, and

therefore Butler was contributorily negligent; and 4) Butler failed to exercise ordinary care for her own safety by walking when she could not see, and therefore was contributorily negligent as a matter of law. ECF No. 16 at 2. While the Court previously recommended that summary judgment be denied on most of these claims as a sanction for the spoliation of the surveillance video, it will now address the merits of each of these contentions in turn.

A. Proximate cause

To prove negligence "an injured invitee must first establish the existence of an unsafe condition on the premises." *Hodge v. Wal-Mart Stores, Inc.*, No. Civ.A.3:02CV714, 2003 WL 23545860 (E.D. Va. April 18, 2003) (quoting *Kendrick v. Vaz, Inc.,* 244 Va. 380, 421 S.E.2d 447, 450 (Va. 1992). However, mere existence of an unsafe condition is insufficient to meet the burden of proof for a prima facie premises liability claim. *Marchant v. Boddie-Noell Enter., Inc.*, 344 F. Supp. 2d 495, 497 (W.D. Va. 2004). Kroger correctly asserts that Butler cannot meet her burden by only offering evidence that there was an unsafe condition and an injury occurred. ECF No. 16 at 10. Butler must show a causal connection between the unsafe condition and her injury, i.e. "*why* and *how* the incident happened." *Hodge v. Wal-Mart Stores, Inc.,* 360 F.3d 446, 451 (4th Cir.2004) (quoting *Town of West Point v. Evans,* 224 Va. 625, 299 S.E.2d 349, 351 (1983) (alteration in original); *see also Marchant*, 344 F. Supp. 2d at 497. However, "[p]roximate cause is usually a question of fact for the jury, and only when facts are susceptible of but one inference and reasonable men can reach but one conclusion from them does the question become one of law for court." *Taylor v. Great Atlantic & Pac. Tea. Co.,* 209 Va. 64, 66, 161 S.E.2d 692, 693 (1968).

Here, a reasonable person could reach multiple conclusions as to whether the blueberries were the proximate cause of Butler's fall and resulting claim of injury. Notably, both parties point

to the same excerpts from Butler's deposition, in which she describes the fall and what she

perceived to be the cause of the fall.

> Q: Tell me about the fall. Can you describe what happened?
> A: I slipped on blueberries and went sliding across the floor on my knees.  And I
> hung on to the cart so that I wouldn't fall all the way over and hit my head.
>  . . . .
>
> Q: So did any portion of your body other than your knees hit the floor?
> A: My upper body.
>
> Q: How did that come about?
> A: Well, I fell face-forward, but I didn't fall far enough to hit my head. I was
> hanging on to the cart so that I wouldn't hit my head.
>
> Q: What part of your upper body hit the floor?
> A: My right Shoulder
> ****
>
> Q: How do you know that you slipped on blueberries?
> A: Because when I stood up, I turned back around and looked at them and that's
> what was under my feet.
>
> Q: Were there blueberries on your sandals?
> A: No. They were on the floor.
>
> Q: Okay. Could you see if the blueberries had been . . . . Were the blueberries still
> whole on the floor or had they been smashed?
> A: Well, the one that I found was smashed, but there were a bunch of whole berries
> still on the floor.  And they sent someone to come sweep them up.

ECF No. 18 attach 5 at 30–32.  Kroger references the comments above and argues that Butler

cannot meet her burden of proof because evidence that there were blueberries in the vicinity of her

fall is insufficient to establish a causal connection between Kroger's conduct and her injury.

Kroger also relies on *Marchant,* 344 F. Supp. 2d at 497, for the proposition that the mere existence

of an unsafe condition is insufficient to establish proximate cause.  ECF No. 16 at 10.  However,

*Marchant* is inapposite to the underlying facts here.

31

In *Marchant*, the plaintiff allegedly tripped on the sidewalk outside of a restaurant owned by defendant. 33 F. Supp. 2d at 496. Despite the testimony of the plaintiff and two eyewitnesses to the fall, the court ultimately held that "there is no evidence that would allow a jury to find without speculation that Marchant tripped over the alleged defect." *Id.* at 499. The court further concluded that "Marchant merely has demonstrated that there were missing tiles and an exposed drainpipe at the restaurant, and the he fell from the sidewalk. There is insufficient evidence to link the missing tiles or drainpipe to the fall. Marchant fails to establish causation . . . ." *Id.*

Kroger highlights the similarities between Marchant and Butler, specifically noting that Marchant felt his foot hit something, but did not see what caused his fall. ECF No. 16 at 11. However, certain aspects of Marchant's case are materially dissimilar to the facts here. Marchant suffered from a preexisting condition that included a history of blacking out, falling, visual impairment, memory problems, and use of a walker. *Marchant*, 344 F. Supp.2d at 496. Further, Marchant was unaware of what may have caused his fall until he returned to the location a week later and saw an orange safety cone on the sidewalk next to missing tiles and an exposed drainpipe. *Id.* at 499. In the instant matter, unlike *Marchant*, there is no evidence that Butler suffered from any health-related condition that could serve as a potential alternative cause for her fall. In fact, no other potential cause for Butler's fall has been suggested. Notably, too, when asked immediately after her fall what had happened, Butler identified the blueberries under her feet and around her on the floor as the cause of her fall.[12]

> Q: Were there other customers in the produce section when you fell?
> A: No. There was a man right behind me and asked what happened when he saw me go down to the floor.
> Q: Do you know who that man is?
> A: I have no idea.
>
> ****

---

[12] Butler's statement under these circumstances qualifies as an exception to the hearsay rule as either a present sense impression under FRE 803(1) or an excited utterance under FRE 803(2).

Q: What did you tell the man about what happened?

A: I said I slipped on that berry, the berries that were on the floor, and I pointed at them. And he looked down and saw them.

ECF No. 18, attach. 5 at 51–52.

In addition, contrary to Kroger's characterization that Butler "was unable to establish that any part of her body came into contact with a single blueberry," ECF No. 16 at 10, Butler testified that she saw the blueberries underfoot while getting up after the fall, including one blueberry that was smashed. ECF No. 18, attach. 5 at 31–32. Giving Butler the benefit of all reasonable inferences, this testimony, in conjunction with Store Manager Moragne's statement in the Kroger incident report form he completed,[13] provide sufficient evidence that could result in multiple conclusions as to the question of proximate cause. On the facts presented here, in addition to denying summary judgment based on Kroger's spoliation of the video evidence, "reasonably fair-minded [persons] may differ as to the conclusions of fact to be drawn from the evidence," thereby precluding summary judgment on the issue of proximate cause. *Cole v. Food Lion, L.L.C.*, 370 F. Supp. 2d 434, 438–39 (E.D. Va.), *aff'd sub nom. Cole v. Food Lion, LLC*, 156 F. App'x 552 (4th Cir. 2005) (quoting *Colonial Stores, Inc. v. Pulley*, 203 Va. 535, 125 S.E.2d 188, 189 (1962) (citing *Steele v. Crocker*, 191 Va. 873, 62 S.E.2d 850, 853 (1951).

The Court therefore **RECOMMENDS** that Kroger's Motion for Summary Judgment on proximate cause be **DENIED**.

B. Ordinary Care

Kroger next argues that even if Butler were able to demonstrate causation, summary judgment should be granted because the undisputed facts establish that it exercised ordinary care

---

[13] In response to the statement: "Please describe the area of the incident, including the presence of any cones, warnings, size and color of hazards, etc…(as witnessed by you in your investigation, not as conveyed by the customer)" Moragne wrote: "There was [sic] blueberries on the floor." ECF No. 18, attach. 1.

as a matter of law. Generally, a business owner owes invitees upon the premises a duty to exercise ordinary care. *Winn-Dixie Stores, Inc. v. Parker,* 240 Va. 180, 182, 396 S.E.2d 649, 650 (1990). This includes a duty to "have the premises in a reasonably safe condition for her visit; to remove, within a reasonable time, foreign objects from its floors which it may have placed there or which it knew, or should have known, that other persons had placed there; to warn the plaintiff of unsafe condition if it was unknown to her, but was, or should have been, known to the defendant." *Colonial Stores*, 203 Va. at 536. Kroger contends that, since the undisputed facts establish that Moragne confirmed the floor was free of spilled blueberries at 6:00 p.m. and Butler fell at 6:04 p.m., no reasonable jury could find that Kroger failed to exercise ordinary care as a matter of law. ECF No. 16 at 11-15. In support of its argument Kroger's relies significantly on *Great Atlantic & Pac. Tea Co. v. Rosenberger*, 203 Va. 378 (1962), and *Wiley v. Wegmans Food Markets*, 2014 WL 7359717, No. 1:14cv235 (E.D. Va. Dec. 14, 2014), both of which involved slip and falls on liquids inside of grocery stores (A&P and Wegmans). In both cases, the material facts were not disputed regarding the stores' actions taken promptly after receiving notice of the spills. In *Great Atlantic*, the court found as a matter of law that A&P had exercised ordinary care because it "immediately closed the check-out counter adjacent to the pool of [liquid] starch, posted a store employee at the starch to guide customers around it, and dispatched another employee to the rear of the store to secure a mop to remove the starch." 203 Va. 378, 379. Similarly, in *Wiley* the court found that Wegmans exercised ordinary care as a matter of law because it began to clean up the spilled liquid "less than two minutes following the spill." 2014 WL 7359717 at *1. Accordingly, comparing its response to the spill to that of A&P and Wegmans, Kroger argues it exercised ordinary care as a matter of law because of its store clerk's expedient response to the spilled blueberries.

34

However, the evidence regarding how the blueberries fell to the floor and the expediency of Kroger's response to the unsafe condition of the floor is disputed. The evidence produced to the Court establish only an approximate timeline of the events that occurred that day. The parties do not agree on these approximations, which are pivotal for assessing whether Kroger exercised ordinary care in response to the blueberries on the floor. Assuming as true that Moragne confirmed the floor in the produce department was clear of hazards at 6:00 p.m., how long the blueberries remained on the floor before Butler's fall is a material fact in dispute. Kroger's ordinary care argument depends on Butler falling only four minutes after she entered the store at 6:00 p.m, and it also relies on a misinterpretation of Butler's testimony as to how long she was in the store before she fell. As discussed *supra*, while Kroger argues that Butler fell four minutes after arriving at the store, Butler's testimony was that she fell four minutes after she picked up certain items and placed them in her cart. Necessarily, Butler had to have arrived at the store some time prior to placing the items in her cart. If the fall occurred at 6:15 p.m. as Moragne's incident report suggests, then Butler could have fallen as much as fifteen minutes after Moragne last checked the floor. If the spill occurred moments after Moragne checked the floor, then a reasonable jury could find that leaving the blueberries on the floor for as much as fifteen minutes was a breach of the duty of ordinary care. *Winn-Dixie Stores, Inc.,* 240 Va. at 182 (explaining the store owner's duty to "remove, within a reasonable time, foreign objects from its floors which it may have placed there or which it knew, or should have known, that other persons had placed there").

It is worth acknowledging, once again, that the missing surveillance footage might in fact have provided clarity for many of these considerations, and the undersigned has recommended that the Court exercise its discretion to deny Kroger summary judgment on this issue as a sanction in keeping with Butler's Motion for Spoliation of Evidence. Spoliation aside, given the disputed

35

material facts regarding how long the hazardous condition may have been present, summary judgment is not warranted. Therefore, the Court **RECOMMENDS** that Kroger's Motion for Summary Judgment on ordinary care be **DENIED.**

C. Open and Obvious

Alternatively, Kroger asserts that the spilled blueberries were an open and obvious hazard and Butler's fall was the product of her own contributory negligence. Even if summary judgment is not denied as a sanction on this issue, the open and obvious nature of the spilled blueberries appears to be a material fact in dispute.

The effect of a dangerous condition being open and obvious is twofold. First, a business owner is absolved of its duty to give notice of a dangerous condition where "the dangerous condition is open and obvious, and is patent to a reasonable person exercising ordinary care for his own safety." *Fultz v. Delhaize American, Inc.*, 278 Va. 84, 89 (2009), quoting *Knight v. Moore*, 179 Va. 139, 145 (1942). Second, "A person who trips and falls over an open and obvious condition or defect is guilty of contributory negligence as a matter of law." *Scott v. City of Lynchburg*, 241 Va. 64, 66, 399 S.E.2d 809, 810 (1991). Therefore, the substantive summary judgment inquiry largely turns on whether there is a genuine issue of material fact as to whether the spilled blueberries were an open and obvious hazard.

A hazardous condition is open and obvious where "the plaintiff would have seen the hazard if she had been looking." *Hudson v. Kroger Co.*, No. 6:06cv00046, 2007 WL 2110340, at *3 (W.D. Va. July 18, 2007). Such a determination requires an assessment of the facts and circumstances surrounding the hazard and the resulting injury. The question of whether a hazard is open and obvious only becomes a question of law, for purposes of summary judgment, where the relevant facts and circumstances are "without conflict, or unless fairminded men cannot differ on the

36

inferences to be drawn from it." *Crocker v. WTAR Radio Corporation*, 194 Va 572, 574, 74 S.E.2d 51, 53 (1953). The assessment of facts and circumstances surrounding an alleged open and obvious hazard often include: review of the Plaintiff's firsthand account of the hazard and the fall; contrasting witness descriptions of the hazard; the effect, if any, of voluntary actions that would reduce a plaintiff's subjective awareness; expectations in light of the surrounding environment and circumstances; relevant permissible inferences regarding visibility and possible obstructions; and reasonable hypotheticals that account for variance in the exact location of the hazard. *See Newcomb v. Food Lion Inc.*, No. 95-3044, 1996 WL 469902 at *2 (4th Cir. 1996) (holding that wet footprints in the entryway to the store were open and obvious especially where "plaintiff should have been on the lookout for a wet floor . . . when it had been raining all day"); *Gottlieb v. Andrus*, 200 Va. 114, 118, 104 S.E.2d743, 747 (1958) (indicating that every reasonable hypothetical resulted in the conclusion that the boxes were open and obvious); *Crocker v. WTAR Radio Corp.*, 194 Va. 572, 575, 74 S.E.2d 51, 53 (1953) (holding that "it was a question for the jury as to whether the [uneven stage] was so open and obvious" because, *inter alia*, others had nearly fallen at the same place. ); *Tazewell Supply Co. v. Turner*, 213 Va. 93, 96, 189 S.E.2d 347, 350 (1972) (holding that the boxes were open and obvious based on witness testimony).

Among other cases, Defendant relies on the factually analogous case *Hudson v. Kroger*, No. 6-06cv46, 2007 WL 2110340 (W.D. Va. July 18, 2007), in support of its claim that the blueberries were an open and obvious hazard. *Hudson* was also a Kroger slip-and-fall case in which the plaintiff fell on spilled produce. *Id.* at * 1. Specifically, the dangerous condition in *Hudson* was spilled cherries across a four-by-eight-foot area of the white floor. *Id.* at *2. Additionally, the plaintiff and eyewitness, her husband, both admitted multiple times that she was not looking at the floor, and the cherries had been visible to anyone looking at the floor. *Id.* at *3.

In light of these undisputed facts established by plaintiff's testimony, the court held that there were no material facts in dispute and granted Kroger's Motion for Summary Judgment in part because the cherries on the floor were open and obvious. *Id.* at *3, *6. While *Hudson* is undoubtedly similar to the present case, it is factually distinguishable. Unlike in *Hudson*, the blueberries on the gray colored floor in the present case did not necessarily draw the apparent contrast and increased visibility as did the cherries on the white floor. Further, while Kroger employees testified the blueberries were "easy to see" on the floor, ECF No. 16, attach. 3 at 12 and attach. 4 at 7, Butler disputes this, ECF No. 18, attach. 5 at 57 ("I could see where I was going, but I couldn't see anything on the floor. If there was something dark on the dark floor, no, I didn't see that."). As the Court has noted, the best evidence might have been the missing surveillance video.

Moreover, the surrounding facts and circumstances do not clearly establish that the blueberries were an open and obvious hazard. By all accounts, the spilled blueberries spanned the aisle between the produce and floral section of the store, leading up to a few feet in front of the store entrance. While the produce section was just to the right of the entrance it remains unclear from where the blueberries were immediately visible. Disputed facts such as the visibility of the blueberries on the dark floor, the effect of the change in lighting, and the reasonable expectations of someone in Butler's position indicate that reasonable persons could differ as to whether the blueberries were constituted an open and obvious hazard obviating Kroger's duty to warn.

As to Butler's visibility and possible obstructions to her view of the blueberries, a permissible inference may be drawn that Butler's cart did not obstruct her view as it was mostly empty. However, Kroger seeks to draw the additional inference that the blueberries were open an obvious because Butler was able to identify them immediately after her fall. While this inference was permissible in *Hudson v. Kroger*, where the plaintiff was not looking where she was going,

here Kroger does not dispute Butler's testimony that she was looking where she was going. Instead, an outside factor—the transition from the sunshine in the vestibule to the store entryway—is alleged to have affected Butler's ability to see the blueberries as she re-entered the store. While Butler's potentially impaired vision is relevant to the reasonability of her conduct and her alleged contributory negligence in continuing to walk into the produce department, it also informs the consideration of whether the blueberries were open and obvious. Similarly, the ongoing dispute over the degree of visibility at the entrance to the store may impact the assessment of Kroger's reciprocal duty to manage unsafe conditions at the entry way for customers entering from outside.

As with Kroger's previous contentions, the missing surveillance footage impacts the resolution of this defense as it might have disclosed the obscurity or obviousness of the hazard. The undersigned therefore has recommended that the Court exercise its discretion to deny Kroger summary judgment on this issue as a sanction for Kroger's spoliation. Spoliation aside, however, Kroger has proffered insufficient evidence to ascertain as a matter of law whether Butler should have seen the hazard if she had been looking, and there are a number of reasonable possibilities stemming from the disputed facts and circumstances surrounding Butler's fall upon which a reasonable jury could find that the blueberries were not an open and obvious hazard. Therefore, viewing the facts and drawing reasonable inferences in the light most favorable to Butler, the Court **RECOMMENDS** that Defendant's Motion for Summary Judgment regarding the open and obvious nature of the hazard be **DENIED**.

D.  Contributory Negligence

Kroger asserts as its final basis for summary judgment that Butler was contributorily negligent for failing to exercise ordinary care for her own safety when she proceeded to walk into the produce department before her vision had adjusted from the bright sunlight in the vestibule.

> "[T]he presence or absence of negligence is a question for the jury, not only where there is a conflict in the evidence on the subject, but also where there is room for a difference of opinion among reasonable men as to the proper inference which might fairly be drawn from unconflicting evidence. Diverse inferences may reasonably be drawn from undisputed facts. Whenever the facts proved without dispute require the exercise of reason and judgement, so that one reasonable mind may infer that a controlling fact exists and another that it does not exist, there is a question for the jury."

*Bassett Furniture Industries v. McReynolds*, 216 Va. 897, 907 (1976), quoting *Acme Markets v. Remschel*, 181 Va. 171, 178-79 (1943). "Normally, both contributory negligence generally, and the open and obvious nature of a hazard specifically, are jury questions. In clear cases, however, the contributory negligence of the plaintiff may be established as a matter of law." *Hudson v. Kroger*, (citing *Artrip v. E.E. Berry Equip. Co.*, 240 Va 354, 397 S.E.2d 821, 823 (Va.1990)). This does not appear to be one of those clear cases. Kroger correctly acknowledges that an individual who is injured because of an open and obvious condition is typically guilty of contributory negligence. ECF No. 16 at 16. However, such a determination is necessarily contingent upon an initial finding that the hazard was in fact open and obvious. Accordingly, where there are material facts in dispute regarding whether the hazard is open and obvious, there are also material facts at in dispute regarding any contributory negligence in relation to the alleged open and obvious hazard. Kroger specifically alleges that "[h]ad Plaintiff exercised reasonable care, she would have waited until her eyes adjusted from the change in lighting conditions, seen the open and obvious blueberries allegedly in front of her path, and avoided falling." ECF No. 16 at 19. Thus, the degree of Butler's negligence, if any, turns equally on the reasonability of her decision to keep walking despite the lighting conditions, and the open and obvious nature of the blueberries. Without undisputed evidence of both, contributory negligence cannot be decided as a matter of law.

40

Kroger correctly acknowledges the interconnectedness of the open and obvious and contributory negligence analyses. In fact, at the hearing, Kroger argued that Butler is unable to escape summary judgment as it would require her to take inconsistent positions regarding the effects of her impaired vision. Kroger argued that there are only a limited number of rational outcomes: either 1) the blueberries were open and obvious, Butler saw or should have seen them despite the lighting, and she is contributorily negligent; or 2) the blueberries were not open and obvious because of her impaired vision, but Butler is still contributorily negligent because she unreasonably kept walking despite her inability to see. This argument, of course, ignores the third possibility, which is that the blueberries were not an open and obvious hazard regardless of Butler's vision. In any event, contributory negligence based on Butler's decision to walk into the produce department under these circumstances turns on her subjective visibility. It is for this reason that the undersigned has not recommended denial of summary judgment as a sanction for spoliation of the video, because the video would not aid the trier of fact in assessing this issue. However, whether Butler's decision to walk into the produce department demonstrated a lack of ordinary care for her own safety is matter that must be left to a jury.

The Court notes a distinction between the parties' characterization of Butler's purported impaired vision upon re-entry to the store. Notably, throughout the briefing and transcript of Butler's deposition, Kroger argued that Butler "could not see where she was going" and "could not see the floor." ECF No. 16 at 18. Meanwhile, Butler provided a more specific description of her subjective visibility.

> Q: So you couldn't see where you were going after you came from the vestibule . . . because your eyes had not adjusted from the sunshine?
> A: I could see where I was going, but I couldn't see anything on the floor. If there was something dark on the dark floor, no, I didn't see that.

ECF No. 18, attach. 5 at 57. Butler's specific description of her visibility is significant because it helps inform the reasonableness of her decision to keep walking despite her vision. In fact, Butler's description of her impaired vision narrows the focus of the contributory negligence analysis. The question of Butler's contributory negligence is more accurately stated, whether a person exercising ordinary care for her own safety, who could see where they were going, but not "something dark on the dark floor," would have waited  for her eyes to adjust before proceeding through the entryway. If Butler really could not see at all, there might be little to no room for a difference of opinion as to whether she exercised ordinary care when she proceeded to walk blindly into the store. However, to the extent that she could see where she was going but struggled to see what was on the "dark floor" as her eyes adjusted, there are disputed material facts that could leave "room for a difference of opinion among reasonable men as to the proper inference which might fairly be drawn from unconflicting evidence." *Bassett Furniture Industries*, 216 Va. at 907.

Accordingly, the undersigned **RECOMMENDS** that Kroger's Motion for Summary Judgement regarding Butler's contributory negligence be **DENIED**.

## IX. RECOMMENDATIONS

In accordance with its findings of fact and conclusions of law, the undersigned **RECOMMENDS** Plaintiff's Motion for Imposition of Sanctions, ECF No. 31, be **GRANTED IN PART**, and that Kroger be sanctioned as follows:

1.      Kroger's motion for summary judgment should be denied regarding its defenses alleging no proximate cause, no breach of duty, and contributory negligence based on open and obvious hazard.

42

2.      The jury should be instructed that there was video of Butler's slip and fall but that Kroger lost it, and both parties should be permitted to present evidence and argument regarding Kroger's failure to preserve the video evidence.

3.      Kroger should be precluded from eliciting testimony from Vernon Harris claiming that the video did not show what caused Butler to slip and fall.

Additionally, in accordance with its findings of fact and conclusions of law, the undersigned **RECOMMENDS** Defendant's Motion for Summary Judgment, ECF No. 15, be **DENIED**.

## X. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of this Court specific written objections to the above findings and recommendations within fourteen (14) days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a).  A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made.  The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985);

*Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Order to all counsel of record.

It is so **ORDERED**.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
November 30, 2020